**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OHIO DEMOCRATIC PARTY and JONATHAN BRADNER, | § | |
| *Plaintiffs,* | § | |
| v. | § | Case No.: |
| FRANK LAROSE, in his official capacity as Ohio Secretary of State, HAMILTON COUNTY BOARD OF ELECTIONS, ALEXANDER F. LINSER, ALEX M. TRIANTAFILOU, CHARLES H. GERHARDT, III, and JOSEPH L. MALLORY, in their official capacities as members of the Hamilton County Board of Elections, | § | |
| *Defendants.* | § | |

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

## INTRODUCTION

1. This case concerns approximately 740 provisional ballots cast in Hamilton County in the November 3, 2026 general election. The voters were registered in Ohio, had moved to Hamilton County from another Ohio county without updating their registrations, and cast provisional ballots at the polling places assigned to their new addresses. Before the election, the Secretary of State's published guidance told election officials that voters in this situation could cast provisional ballots at their polling places on Election Day, and every county in Ohio counted ballots from these voters or have announced they plan to. After the election, the Hamilton County Board of Elections deadlocked over whether to count the ballots, and the Secretary stated that they could not be counted. Yet the Board counted the provisional ballots of voters who moved within Hamilton County and voted the same way, and every other county board in Ohio has counted or announced they will count ballots cast in the same circumstances. Plaintiffs seek to prevent Defendants from excluding otherwise valid ballots on that basis after the voters no longer have an opportunity to vote elsewhere. Discarding these ballots treats these voters differently from similarly situated voters inside and outside Hamilton County, without justification, and in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

2. Plaintiffs seek expedited relief before the Hamilton County Board of Elections certifies results that exclude these ballots. The Hamilton County Board is scheduled to meet at 10:00 a.m. on Tuesday, November 24, 2026. November 24, 2026 is the statewide deadline for completing the official canvass and certifying county results.

## JURISDICTION AND VENUE

3. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to redress deprivations under color of state law of their rights secured by the Fourteenth Amendment.

4. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1343, 2201, and 2202 because the matter in controversy arises under the Constitution and laws of the United States and asserts the deprivation, under color of state law, of rights under the U.S. Constitution.

5. Venue in this Court is proper under 28 U.S.C. § 1391 because this Court has personal jurisdiction over Defendants, who are sued in their official capacities, and all of whom have principal offices in the Southern District of Ohio, and because a substantial part of the events giving rise to the claims occurred in the district.

6. This action is properly brought in the Eastern Division of the Southern District of Ohio because Defendant LaRose has his principal office in Franklin County.

**PARTIES**

7. Plaintiff Ohio Democratic Party ("ODP") is one of Ohio's two legally recognized major political parties organized and operating within the meaning of Ohio Rev. Code § 3517.01(A)(1). ODP's primary purpose is to elect Democratic Party candidates to public office, and, in line with that mission, support candidates for local, state, and federal office in the November 3, 2026 General Election. In addition to fielding candidates, ODP has thousands of members who volunteer their time and money to support these efforts and the Democratic Party. ODP counts the several million Ohio voters who supported Democratic candidates with their vote as part of its constituency as well. ODP files this suit on behalf of itself, its members, and voters who cast ballots for its candidates, including Jonathan Bradner, but whose ballots have not been counted due to the actions of Hamilton County.

8. On Election Day in Hamilton County, thousands of these constituents cast ballots at local precinct polling locations for Democratic candidates supported by ODP, including

provisional ballots. These candidates included, in Hamilton County, Jonathan Bradner for Ohio House District 29.

9. Plaintiff Jonathan Bradner, the Democratic candidate for Ohio House District 29, is running against Representative Cindy Abrams, who was also on the ballot in the November 3, 2026 General Election. As of filing, the current vote totals in this race will trigger an automatic recount by the Hamilton County Board of Elections. *See* Ohio Rev. Code § 3515.011. Bradner sues here on his own behalf and on behalf of those who voted for him but have not had their ballots counted in Hamilton County.

10. Defendant Frank LaRose is the Ohio Secretary of State, Ohio's chief election official. Ohio Rev. Code § 3501.04. Defendant LaRose has "the authority to control the BOEs…" *League of Women Voters v. Brunner*, 548 F.3d 463, 475 n.16 (6th Cir. 2008). Defendant LaRose's principal office is at 180 Civic Center Dr., Columbus, Ohio 43215.

11. Defendant Hamilton County Board of Elections is the board of elections for Hamilton County, Ohio, with its office at 4700 Smith Road, Cincinnati, OH 45212.

12. Defendant Alexander F. Linser is a member and chair of the Hamilton County Board of Elections, and is sued in his official capacity.

13. Defendant Alex M. Triantafilou is a member of the Hamilton County Board of Elections, and is sued in his official capacity.

14. Defendant Charles H. Gerhardt, III is a member of the Hamilton County Board of Elections, and is sued in his official capacity.

15. Defendant Joseph L. Mallory is a member of the Hamilton County Board of Elections, and is sued in his official capacity.

16. Defendants County Board of Elections, Linser, Triantafilou and Gerhardt are hereinafter referred to as the "Board Defendants."

17. Each Defendant here has acted under color of state law with respect to the allegations in this Complaint. The Board Defendants determined whether provisional ballots are counted, and they will canvass and certify the results of the affected contests. Defendant LaRose is the State's chief election officer and has authority to control the boards of elections.

## BACKGROUND AND FACTS

***Inter-county movers cast countable provisional ballots at polling locations***

18. Millions of Ohioans cast ballots during early voting and on Election Day, November 3, 2026. Many of those voters moved between Ohio counties prior to Election Day but had not updated their voter registration address before voting ("inter-county movers").

19. Ohio law provides that such a voter may cast a provisional ballot, which will later be counted, assuming all other requirements for voting are met. *See* Ohio Revised Code § 3505.181 (providing that inter-county movers "shall be permitted to cast a provisional ballot") and § 3505.183 (discussing the counting of provisional ballots and not distinguishing between intra and inter-county movers).

20. The Board Defendants determine whether provisional ballots are counted, and they will canvass and certify the results of the affected contests. Ohio Rev. Code §§ 3505.183, 3505.32.

21. Ohio law requires boards of elections to "[p]erform other duties as prescribed by law or the rules, directives, or advisories of the secretary of state," Ohio Revised Code § 3501.11(P), and "board of elections and its members have a duty to follow the secretary of state's directives[.]" *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 16.

22. Secretary of State Frank LaRose issues guidance to counties, primarily through directives, as the "necessary tools for . . . dedicated election officials to uphold and enhance the high standards that Ohioans expect and deserve." Ohio Secretary of State, Ohio Election Official Manual, 1-1 (published August 2026), available at https://www.ohiosos.gov/assets/dir2026-27-fulleom.pdf.

23. The Election Official Manual is a "permanent directive" under Ohio Revised Code § 3501.053, and "provides a formal guide issued by the Secretary of State to boards of elections." *Id.*

24. Chapter 8 of the Election Official Manual specifically addresses provisional voting. Ohio Election Official Manual at 8-301–8-302.

25. Under the heading "WHEN AND WHERE CAN A PROVISIONAL BALLOT BE CAST?", the Election Official Manual states in relevant part: "Certain voters *can cast a provisional ballot* at the board office or early voting site during the established early voting period, or *at their polling place on Election Day*, including…*[v]oters who have moved outside of their county (but still in Ohio) and didn't update their address by the deadline*." *Id.* (emphasis added).

26. Hamilton County's own poll-worker guide does not distinguish between voters who moved within the county and voters who moved from another Ohio county. It lists "[a] change of address that moves a voter into your precinct from a different precinct" as a reason for provisional voting and directs poll workers to process such a voter provisionally at the polling location when the voter's new address is within it, with no instruction to send voters who moved from another county to the board office. Ex. 1, Hamilton County PEO Quick Guide, at 26–27; see also Ex. 2, Linser & Mallory letter, at 1.

27. And the Hamilton County Board of Elections website instructs voters that "[a]nyone registered to vote in Ohio can go to their local polling place to vote on Election Day." https://votehamiltoncountyohio.gov/voting-options-2/, and makes clear that even voters who "haven't updated [their] Ohio voting address" can vote a provisional ballot at their polling location on Election Day. https://votehamiltoncountyohio.gov/voting-options-2/election-day/

28. Additionally, voter education materials published by the Secretary of State's office describe what rights are attached to provisional ballots. A "Voting Rights Information" poster must be displayed at every polling location and kept up-to-date by the Secretary's office. The most recent version of the poster, last revised by the Secretary of State's Office in September 2026 for use at the November 2026 General Election, states: "Voters whose names do not appear on the poll list in an election, or who are unable to comply with identification requirements, are entitled to vote by provisional ballot if they declare they are registered to vote in the jurisdiction and eligible to vote in the election" and "Voters who are registered to vote in Ohio and who have moved within the state before an election are entitled to vote in that election under fail-safe procedures, even if they did not previously advise election officials of the move."

**VOTING RIGHTS INFORMATION**

52 U.S.C. 21082(b)(1), (2)(E)-(F)

**Voters' Rights**

1. Voters whose names do not appear on the poll list in an election, or who are unable to comply with identification requirements, are entitled to vote by provisional ballot if they declare they are registered to vote in the jurisdiction and eligible to vote in the election. *[52 U.S.C. 21082(a), 21083(b); R.C. 3505.181]*

[Ex. 3, accessed November 22, 2026 at https://www.ohiosos.gov/assets/voting-rights-poster-legal.pdf.] And a "Special Voting Instructions" poster, also kept up to date by the Secretary of State's Office and posted in every precinct, informs voters that they may cast a provisional ballot if they "moved from one Ohio precinct to another Ohio precinct" and did not update their registration by the deadline. Form SOS 2282 (07/2026).

29. For at least a decade, including in the November 3, 2026 general election, it has been standard practice for Ohio counties to count provisional ballots by voters who move between counties within Ohio and cast their provisional ballot at their polling place. *See* Ex. 4, William Rich Aff., ¶¶ 6-7]; *see also* Ex. 5, Jasmyne Moore Aff., ¶ 7.

30. The chairman of the Summit County Board of Elections, who has held that position since March 2016, attests that for at least as long as he has served, it has been the practice, "in Summit County and, to the best of my knowledge and experience, statewide," that a voter who moves from one Ohio county to another without updating his or her registration "may cast a provisional ballot at their polling place on Election Day," and that "[i]f otherwise valid, that provisional ballot would then be counted." Ex. 4, Rich Aff. ¶ 6. "It has never been the practice, in Summit County or elsewhere, to require voters to travel to the Board of Elections headquarters in order to vote under these circumstances." *Id.* ¶ 7.

31. In Hamilton County, 740 registered Ohio voters who had moved from another Ohio county and had not updated their registration by the deadline, cast provisional ballots on Election Day at the polling place for their new residence (the "Disputed Ballots"). Upon information and belief, these voters cast their ballots at polling places in reliance on (1) guidance by the Secretary of State in the form of his Voting Rights Information and Special Voting Instructions posters, and (2) guidance by Hamilton County election workers, who in turn were relying on guidance from the Secretary of State in his Election Official Manual that such voters "can cast a provisional ballot . . . at their polling place on Election Day." Ohio Election Official Manual 8-301 to 8-302 (Dir. 2026-35); See Form SOS 2282 (07/2026).

32. The Disputed Ballots were cast in a manner Ohio election officials have long accepted. Two members of the Hamilton Board stated: "To our collective memory, such

instruction has not been given in this or past elections, and such provisional ballots have always been counted." Ex. 2, Linser & Mallory letter, at 1.

33. Upon information and belief, no precinct election official told any of these voters that a ballot cast at the polling place would not be counted, nor did any election official direct them to vote elsewhere, such as at the board of elections office.

34. Upon information and belief, none of these voters had reason to consider voting at the board of elections office because they relied on State directives, voter-facing instructions, poll workers, and past practice.

35. Upon information and belief, voters in the same circumstances in Ohio's other 87 counties likewise cast provisional ballots at their polling places, and each board of elections in those 87 counties have counted or have announced they intend to count those ballots consistent with the State directives and longstanding practice.

***Hamilton County is an outlier, treating their inter-county voters differently from inter-county voters in the other eighty-seven counties across Ohio***

36. On November 16, 2026, *just one day before* the Board met to determine whether to count provisional ballots and *more than three months* after Secretary LaRose issued the Election Official Manual providing for such provisional ballots to be counted, the Taft Law Firm sent a letter to the Hamilton County Board arguing that 740 provisional ballots should not be counted because inter-county voters cannot "cast a county-to-county address-change provisional ballot at a precinct polling place." Ex. 6, W. Stuart Dornette, Letter to Hamilton Board of Elections (Nov. 16, 2026) (the "Taft Letter").

37. Also on November 16, the Ohio House Democratic Campaign Committee ("OHDCC"), through counsel, sent a letter to the Hamilton County Board, providing

counterarguments to the Taft Letter. Ex. 7, J. Corey Colombo, Letter to Hamilton Board of Elections (Nov. 16, 2026) (the "OHDCC Letter").

38. The OHDCC Letter pointed out that, "historically, Ohio registered voters who move to a new county without updating their voter registration and cast a provisional ballot at their polling location on Election Day have not been directed to go to the Board of Elections." The Letter continued: "Rather, the voters have been provided a provisional ballot at the polling location, and that provisional ballot has been counted in the official canvass. The Precinct Election Official Manual does not contain any statement which instructs poll workers to direct voters to go to the Board of Elections nor does it state that a provisional ballot should not be provided to these voters at the polling location." *Id.*

39. Despite long-time practice and specific guidance from the Secretary of State to the contrary, on November 17, 2026, Alex M. Triantafilou and Charles H. Gerhardt, III, two of the members of the four-member Hamilton County Board, voted to reject the Disputed Ballots. Ex. 2, Linser & Mallory letter.

40. The Board Chair Alexander F. Linser and board member Joseph L. Mallory voted to accept the Disputed Ballots. *Id.*

41. On November 17, 2026, two weeks after the election, the Hamilton Board approved counting every other category of provisional ballots unanimously. The one exception was the Disputed Ballots: a motion to reject those ballots failed on a 2–2 vote. Ex. 8, Secretary LaRose letter, at 1.

42. Upon information and belief, the Hamilton Board counted the provisional ballots of voters who, like the Disputed Ballot voters, had moved to Hamilton County from another Ohio

county without updating their registrations, but who cast those ballots at the board office. Ex. 8, Secretary LaRose letter, at 1; Ex. 6, Taft Letter, at 4.

43. Upon information and belief, the Hamilton Board also counted the provisional ballots of voters who had moved within Hamilton County without updating their registrations and cast those ballots at their polling places on Election Day. Ex. 8, Secretary LaRose letter, at 1; Ex. 6, Taft Letter, at 4.

44. The same day, Chair Linser and Mr. Mallory wrote to Secretary LaRose, describing the situation and asking him to break the Hamilton County Board's tie vote. Ex. 2, Linser & Mallory letter.

45. Under Ohio Rev. Code § 3501.05(B), (C), (G), and (M), the Secretary, as the state's chief election officer, must "[i]ssue instructions by directives and advisories * * * to members of the boards as to the proper methods of conducting elections," "[p]repare rules and instructions for the conduct of elections," "[d]etermine and prescribe the forms of ballots," and "[c]ompel the observance by election officers in the several counties of the requirements of the election laws." Ohio law further provides that, in all cases of a tied vote, if no decision can be made, the matter in controversy shall be submitted to the Secretary of State, "who shall summarily decide the question, and the secretary of state's decision shall be final." Ohio Rev. Code § 3501.11(X).

46. The Linser & Mallory letter narrowed in on the issue clearly: "The Taft Letter attempts to make an argument that the Ohio Revised Code and accompanying Directives require that county-to-county voters must exclusively vote at the Board office on Election Day—an interpretation that contradicts existing Secretary of State published guidance—and misconstrues a provision providing a mechanism for a voter to update their registered address as somehow controlling whether their provisional ballot is valid." *Id.* The Hamilton Board concluded that the

Taft Letter's "statutory argument . . . at best . . . presents an ambiguity, and [board of elections] must construe ambiguous election laws in favor of the right to vote." *Id.*

47. On November 18, 2026, the Hamilton Board, through its Director and Deputy Director under R.C. 3501.11(X), submitted the tie to the Secretary.

48. On November 20, 2026, in contravention of his duty to advise boards as to the proper conduct of elections, the Secretary responded that the matter was "not a proper tie-vote request"; that because "three of the members do not agree," the "ballots shall not be counted under R.C. 3505.27 as a matter of law"; and that he "will not issue a substantive decision." Ex. 8, Secretary LaRose letter.

49. Later on November 20, 2026, the Hamilton County Board deadlocked again with another 2-2 vote. As a result, absent this Court's intervention, the provisional ballots of 740 Ohioans will be left uncounted, despite the fact that these voters followed state guidance and acted exactly as other voters elsewhere in Ohio acted and had their ballots counted. ICRC-TV, Hamilton County Board of Elections 11/20/26, at 46:26–47:06 (YouTube), https://www.youtube.com/live/E2dh2Ts5cng?t=2786s (last visited Nov. 22, 2026); Ex. 5, Jasmyne Moore Aff., 7.

50. Prior to the vote, Chair Linser summed up the situation: "Every other county that has addressed this issue has voted in favor of counting these ballots, and I am not comfortable with Hamilton County being on an island in this situation. Throughout my memory as an election official in the State of Ohio, we have always counted ballots in this situation, and that matters because the voters understand that precedent and the communications that have been made to voters is that that is a valid way for them to cast a ballot, so people came to the polls with the understanding that their vote would count if they voted this way, and their understanding was based

on the published guidance from Boards of Elections and the Secretary of State, and the established practice over the years." *Id.* at 45:20–46:14.

51. No Defendant has asserted that any Disputed Ballot was cast by an ineligible voter. No majority of the Hamilton Board has voted to reject them. The Secretary, while stating that the ballots "shall not be counted" because the Hamilton Board did not agree, has expressly declined to issue a substantive decision on the issue. Under the Secretary's position, the Disputed Ballots will be excluded from the count solely because two of the Hamilton Board's four members would not agree to count them.

52. Voters in other Ohio counties who did exactly what the Disputed Ballot voters did have had their ballots counted. Ex. 5, Jasmyne Moore Aff., 7.

53. For example, on November 16, 2026, the Lucas County Board of Elections voted 4–0 to accept approximately 2,400 provisional ballots, including ballots in this category, and finished counting them on November 17. Lucas Cnty. Bd. Resp. to Nov. 19 Entry, *State ex rel. Schimmel v. Lucas Cnty. Bd. of Elections*, No. 2026-1574 (Ohio).

54. Other boards facing a similar challenge to the one raised in Lucas County have voted the same way. The Wood County Board of Elections received the same challenge on November 16, 2026, declined the challenge, and, upon information and belief, counted such provisional ballots in accordance with past practice, State directives, and the Secretary of State's guidance.

55. Indeed, upon information and belief, every other county board of election in Ohio, including every other board that received such a challenge, has counted or will count provisional ballots cast under the same circumstances. Only the Hamilton County Board has refused.

56. Upon information and belief, no affected voter has been notified that his or her ballot will not be counted.

***Defendants' Unlawful Actions are Causing Irreparable Harm***

57. Defendants' conduct will deprive voters of their fundamental right to participate in our system of government by having their lawfully cast ballots counted.

58. ***Harm to Plaintiff ODP and Its Members:*** Board Defendants' refusal to count the Disputed Ballots, unless enjoined, is continuing to cause irreparable harm to Plaintiff ODP directly and through the harm suffered by Democratic voters and Democratic candidates.

59. It is all but certain that many of the Disputed Ballots were cast by members of ODP. Ex. 9, ODP Aff., ¶ 5.

60. Absent relief, Board Defendants' refusal to count the Disputed Ballots will prevent otherwise valid ballots cast by affected ODP members from being counted in the November 2026 general election.

61. Defendant LaRose's failure to issue instructions to the boards as to the conduct of elections, his refusal to break the tie votes of the Hamilton County Board of Elections on the issue of counting the Disputed Ballots and his order to not count the Disputed Ballots, unless enjoined, will also continue to cause irreparable harm to Plaintiff ODP's members who cast a Disputed Ballot.

62. ODP's members also include Democratic candidates who appeared on the ballot for elected office in Hamilton County in the November 2026 general election.

63. ***Harm to Plaintiff Bradner and Those Who Cast Ballots for Him:*** Board Defendants' refusal to count the Disputed Ballots continues to cause irreparable harm to Plaintiff Bradner, a Democratic candidate for Ohio House District 29 in which Disputed Ballots were cast.

Plaintiff Bradner is currently down in the vote tally in an exceedingly close contest. Plaintiff Bradner faces imminent harm in Hamilton County Board's decision to reject 740 ballots, a number of ballots which is far larger than the current vote differential (19 votes). Ex. 10, Bradner Aff., ¶ 3. Voters who cast a Disputed Ballot for Bradner are also injured because their fundamental right to vote has been abridged in violation of the rights under the United States Constitution.

64. Board Defendants' refusal to count the Disputed Ballots is irreparably harming Plaintiff Bradner and those who cast Disputed Ballots for him by producing an official count in his own election that omits ballots cast by qualified voters in reliance on Defendants' instructions.

65. The harm to both Plaintiffs and to voters in Hamilton County is imminent. The canvass must be completed by November 24, 2026, and, unless enjoined, the Hamilton Board, following the Secretary's guidance, will exclude the Disputed Ballots from the canvass, any recount, and the certification of results in House District 29. If the ballots are excluded from the canvass, a later order to count them may come too late—when the terms of the affected offices begin on January 1, 2027, the deprivation will become permanent. The instant action is the sole means by which the rights of Plaintiffs and the voters of the Disputed Ballots can be restored.

## CLAIMS FOR RELIEF

## COUNT I

### Arbitrary and Disparate Treatment of Similarly Situated Ballots in Violation of the Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983)

66. Plaintiffs reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

67. Defendants' refusal to count the Disputed Ballots denies Plaintiffs and the voters who cast those ballots equal protection and the right to have their vote counted on equal terms—compared both to similarly situated voters in other counties statewide, whose provisional ballots

were counted and to similarly situated voters in Hamilton County, whose provisional ballots were counted.

68. Defendant LaRose's instruction to the Board Defendants that they not count the Disputed Ballots, contrary to the other counties' treatment of similar ballots, is arbitrary and denies Plaintiffs and Disputed Ballot voters equal protection. This action resulted in inter-county disparities.

69. In addition, the Board Defendants' refusal to count the Disputed Ballots—while counting ballots cast by intra-county movers who had also not updated their addresses, without any standard or stated reason for treating these voters differently—is arbitrary and denies Plaintiffs and Disputed Ballot voters equal protection. This action resulted in intra-county disparities.

70. The Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

71. Equal protection principles apply not only to determinations of who may vote but also to which ballots are counted. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (per curiam). At a minimum, equal protection requires "nonarbitrary treatment of voters." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 234 (6th Cir. 2011) (quoting *League of Women Voters*, 548 F.3d at 477 (quoting *Bush*, 531 U.S. at 105)).

72. First, Defendant LaRose expressly told county election officials that inter-county movers who did not update their address by the voter registration deadline could vote a valid provisional ballot at the polling place for the voter's new residence. *See* Ohio Election Official Manual, 8-301–8-302.

73. All 88 of Ohio's Counties then issued provisional ballots to such voters at their local polling places.

74. On information and belief, 87 of Ohio's 88 Counties then counted or have announced that they intend to count those ballots.

75. Hamilton County alone chose to treat these ballots differently.

76. Second, the Hamilton Board counted the provisional ballots of intra-county movers who did not update their address and inter-county movers who did not update their address and voted at the Board office yet refused to count the 740 Disputed Ballots, without any standard or stated reason for treating them differently. This kind of arbitrary intra-county variation without justification cannot withstand constitutional scrutiny. *Hunter*, 635 F.3d at 242.

77. When the Hamilton Board sought guidance from Defendant LaRose on the issue of counting the Disputed Ballots, he declined to intervene to ensure that Hamilton County counted the ballots in a manner consistent with the practice of other Ohio counties.

78. As a result, voters in other Ohio counties who followed the same procedures that the Disputed Ballot voters did in Hamilton County have had their ballots counted.

79. A vote for statewide office cast this way therefore counts in all other Ohio counties and is discarded in Hamilton County, though the contests are identical, the voters equally eligible and similarly situated in every relevant aspect, and the State's instruction to its officials the same. That kind of county-to-county variation without uniform standards is precisely the kind of arbitrary, disparate treatment that the Equal Protection Clause forbids. *See Bush*, 531 U.S. at 105–07.

80. Ohio county election boards conduct the election for the State under the Secretary's directives, and the disparities here flow directly from the rule the Secretary announced in response

to the deadlock. Through the boards and through the Secretary, the State is responsible for the disparate treatment at issue here. The Secretary of State, as the State's chief election officer, has the authority to control the boards and to correct that disparity. *See League of Women Voters,* 548 F.3d at 475 n.16 (explaining that the Secretary of State has "authority to control the BOEs" and was a "proper" party).

81. No state interest justifies such disparate treatment, and no Defendant has asserted any state interest in disenfranchising the voters who cast the Disputed Ballots. Counting the Disputed Ballots would change no other ballot or precinct and would not modify any step by which the State verifies a provisional voter's eligibility.

82. Defendants, acting under color of state law, have deprived, and unless enjoined will continue to deprive Plaintiffs and the Disputed Ballot voters, whose rights Plaintiffs also assert, of the equal protection of the laws, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

83. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief requiring Defendants to count the Disputed Ballots that are otherwise valid, and to include them in the canvass and any certification of the results of the affected contests.

## COUNT II

### Undue Burden on the Fundamental Right to Vote in Violation of the Fourteenth Amendment (42 U.S.C. § 1983)

84. Plaintiffs reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

85. Defendants' refusal to count the Disputed Ballots imposes a severe burden on the right to vote—wholesale disenfranchisement in the November 3, 2026 election—that lacks any justification and thus unconstitutionally burdens the fundamental right to vote of both Plaintiffs and the Disputed Ballot voters.

86. The Fourteenth Amendment protects the right to vote against burdens that the State's interests do not justify. A court weighing such a burden considers its character and magnitude against "the precise interests put forward by the State as justifications for the burden imposed by its rule," weighing "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). The more severe the burden, the more exacting the scrutiny. *Id.*

87. Rejecting a ballot outright is the most severe burden a State can place on the right to vote: it denies the voter's suffrage altogether. Because here the burden was imposed *after* the votes were cast, those voters can no longer cure the purported defect—in the absence of action from this Court, they will be disenfranchised.

88. Defendants have advanced no meaningful justification for a post-facto mandate that registered voters who move between counties, but have not updated their address prior to the registration deadline, vote a provisional ballot only at the election office instead of their polling place, or face disenfranchisement. No Defendant has asserted any state interest in rejecting such ballots, nor has any Defendant asserted the voters were ineligible to cast ballots on any other basis, acknowledging they are otherwise qualified electors.

89. Any purported interest advanced by Defendants could not justify wholesale disfranchisement of hundreds of voters in the November 3, 2026 election, particularly where Defendants act contrary to the State's written guidance, past practice, and the current practice of every other county. Under any level of scrutiny, Defendants' refusal to count the Disputed Ballots imposes an unconstitutional burden on the right to vote of Plaintiffs and the Disputed Ballot voters.

90. Accordingly, Plaintiffs are entitled to a declaration that Defendants' refusal to count the Disputed Ballots unconstitutionally burdens the right to vote, in violation of the Fourteenth

Amendment, and to an injunction requiring Defendants to count the Disputed Ballots that are otherwise valid, and to include them in the canvass and any certification of the results of the affected contests.

## COUNT III

### Violation of the Due Process Clause of the Fourteenth Amendment (42 U.S.C. § 1983)

91. Plaintiffs reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

92. Defendants' decision to not count the Disputed Ballots—after voters followed state guidance and poll worker instructions, reasonably relied on longstanding state election practice, had no reason to foresee the rejection of their ballots prior to voting, and have no notice of rejection or means to cure such ballots following voting—is the sort of fundamental unfairness in the election system that the Due Process Clause forbids.

93. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

94. "The Due Process clause is implicated, and § 1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair." *Warf v. Bd. of Elections of Green Cnty.*, 619 F.3d 553, 559 (6th Cir. 2010) (quoting *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008)).

95. Such fundamental unfairness may arise where a State "significantly departs from previous state election practice." *Warf v. Bd. of Elections of Green Cnty.*, 619 F.3d 553, 559 (6th Cir. 2010), where voters are disenfranchised "whose only error was relying on poll-worker instructions," *Hunter*, 635 F.3d at 243 (6th Cir. 2011) (quoted in *Ne. Ohio Coal. For the Homeless v. Husted*, 696 F.3d 580, 597 (6th Cir. 2012)), and where the rules of the election are changed only

after the election has taken place, thus requiring voters to "somehow to foresee" that their ballots would later be held invalid, *Griffin v. Burns*, 570 F.2d 1065, 1075–76 (1st Cir. 1976).

96. Defendants' refusal to count the Disputed Ballots renders Defendants' conduct of this election fundamentally unfair as a constitutional matter.

97. Defendants' decision to reject the Disputed Ballots departs significantly from previous state election practice. Defendants counted such ballots in prior elections in Hamilton County and, upon information and belief, throughout Ohio, and similarly situated provisional ballots cast in this election were counted in counties across Ohio.

98. Compounding this harm, Defendant LaRose failed to perform his duty to instruct boards as to the proper conduct of elections, resulting in constitutional injury to the affected voters and candidates that could and should have been avoided, had the Secretary properly provided guidance in response to the Board's explicit request. *See* Ex 8, Secretary LaRose letter.

99. Hamilton County voters who availed themselves of this provisional ballot process relied on state guidance and poll workers' instructions in casting their vote.

100. Defendants are changing their policy and practice post-election to exclude an entire category of ballots. The affected voters had no reason to foresee that their ballots would be rejected and no means to protect themselves. The election is over, and they cannot now cast their ballots again at the Board's office.

101. Voters in Hamilton County who voted Disputed Ballots did so under the express guidance of the Secretary of State and Hamilton County election officials.

102. Accordingly, Plaintiffs are entitled to a declaration that Defendants' refusal to count the Disputed Ballots violates the rights of Plaintiffs and the Disputed Ballot voters under Due Process Clause of the Fourteenth Amendment, and to an injunction requiring Defendants to count

those that are otherwise valid, and to include them in the canvass and any certification of the results of the affected contests.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. Declare that Board Defendants' refusal to count the Disputed Ballots constitutes arbitrary and disparate treatment of similarly situated ballots in violation of the Equal Protection Clause of the Fourteenth Amendment;

b. Declare that Board Defendants' refusal to count the Disputed Ballots unconstitutionally burdens the fundamental right to vote in violation of the Fourteenth Amendment;

c. Declare that Board Defendants' refusal to count the Disputed Ballots violates the Due Process Clause of the Fourteenth Amendment;

d. Order the Board Defendants to review the Disputed Ballots under R.C. 3505.183 and count those otherwise valid, without regard to the voters' change of residence from another Ohio county; and order the Board Defendants to include those votes in the canvass and certification of the affected contests;

e. Enjoin Defendant LaRose from enforcing the position stated in his letter to the Hamilton County Board of Elections or any other rule under which the Disputed Ballots are excluded from the count, and order him to issue a directive to the Hamilton County Board of Elections implementing this Court's order;

f. Award Plaintiffs' costs, expenses, and attorney's fees pursuant to any applicable statute or authority; and

g. Grant any other relief the Court in its discretion deems just and appropriate.

Dated: November 23, 2026

Respectfully submitted,

/s/ Spencer J. Hattemer
Spencer J. Hattemer, Trial Attorney (0102663)
**COOPER ELLIOTT**
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (fax)
spencerh@cooperelliott.com

-and-

Norman L. Eisen*
Tianna Mays*
David W. Ogden*
Sofia Fernandez Gold*
Elizabeth S. Westfall*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
Tel: (202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
david@democracydefenders.org
sofia@democracydefenders.org
elizabeth-contract@democracydefenders.org
-and-

Rebecca (Beth) Stevens*
bstevens@msgpllc.com
Joaquin Gonzalez*
jgonzalez@msgpllc.com
Andrew Silberstein*
asilberstein@msgpllc.com
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

**Pro Hac Vice Motion Forthcoming*

**ATTORNEYS FOR PLAINTIFFS**