Alexander F. Linser, Chair
Alex M. Triantafilou
Charles H. Gerhardt III
Joseph L. Mallory

Sherry L. Poland, Director
Raquel D. Burgos, Deputy Director

**Board of Elections**
HAMILTON COUNTY OHIO

4700 Smith Road
Cincinnati, OH 45212

Main Office Number 513 946-8500
Fax 513 946-8560 or 513-946-8565

VoteHamiltonCountyOhio.gov

November 17, 2026

Hon. Frank LaRose
Ohio Secretary of State
180 South Civic Center Drive
Columbus, Ohio 43215

***Re: Tie Vote on Counting of Provisional Ballots Cast at a Polling Location by an Out-of-County Voter***

Dear Secretary LaRose:

We, the undersigned members of the Hamilton County Board of Elections ("Board"), are hereby filing our written argument regarding the tie vote that occurred during the Board's November 17, 2026, meeting in relation to the decision of whether to count provisional ballots cast at a polling location, rather than the Board office, by voters who moved from another Ohio county and had not updated their voter registration by the deadline.

The facts here are straightforward. Seven hundred and forty (740) provisional ballots cast at the November 3, 2026, General Election were cast at a polling place on Election Day by voters who moved from a different Ohio county and did not update their voter registration prior to the deadline. A review of the Precinct Election Officials Manual and training materials shows that there is no clear instruction to poll workers to explain to such voter that they must vote at the Board of Elections office in order for their provisional vote to count. To our collective memory, such instruction has not been given in this or past elections, and such provisional ballots have always been counted.

On November 16, 2026, one day before the Board met to vote on the validity of provisional ballots cast in the November 3, 2026, General Election, the Board received two opposing letters from legal counsel on the issue of whether such provisional ballots should be counted. A letter from Taft Law Firm argued that the Ohio Revised Code requires voters who moved from a different Ohio county without updating their address with the Board by the voter registration deadline to vote provisionally at the Board office on or before Election Day (the "Taft Letter"). A letter from the McTigue & Colombo Law Firm argued that (1) the statutory analysis offered by the Taft Letter focused on non-controlling provisions of the Ohio Revised Code; (2) the permanent Directive 2026-35 issued by the Ohio Secretary of State clearly states that such voters are eligible to vote provisionally at the polling location and that such vote should count if not otherwise invalid; and that (3) such voters would be disenfranchised after the election and were not informed that their ballot may not count if cast at the polling location (the "Colombo Letter").

We find the analysis in the Taft Letter to be unpersuasive. The Taft Letter attempts to make an argument that the Ohio Revised Code and accompanying Directives require that county-to-

**Exhibit 2**

county voters must exclusively vote at the Board office on Election Day—an interpretation that contradicts existing Secretary of State published guidance—and misconstrues a provision providing a mechanism for a voter to update their registered address as somehow controlling whether their provisional ballot is valid. We find the statutory argument to be outlandishly creative, but at best it presents an ambiguity, and we must construe ambiguous election laws in favor of the right to vote.

The Taft letter focuses on the wrong statute. The controlling statutes here are RC 3501.181 and 3501.183. There is no distinction within RC 3501.181 or RC 3501.183 between voters who moved from outside the county and voters who moved from inside the county. A cross-reference in RC 3503.181 (casting provisional ballots) to RC 3503.16, the section relied on in the Taft Letter, calls for **<u>any</u>** voter who moved to be permitted to cast a provisional ballot after completing and signing the required forms under RC 3503.16(B) **<u>or</u>** (C). RC 3503.181(A)(6). The use of the disjunctive "or" statutorily allows for an out-of-county voter to cast a provisional ballot if the required forms under RC 3503.16(B) are completed and signed, rather than under RC 3501(C). Under RC 3505.183 (counting provisional ballots), there is again no distinction between voters who moved from in-county and out-of-county. Read together, the statutes do not provide that a county-to-county mover voting provisionally at the polling place is a legal reason to reject a provisional ballot.

Such distinction is critical on this question, and the lack of a clear legal authority in the provisional voting sections of the Ohio Revised Code demonstrates that it is at least ambiguous as to whether these votes should be counted according to statute. When an election statute is ambiguous, there is a duty to liberally construe election laws in favor of the right to vote, and such right is "protected by both the constitutions of the United States and of the state." *State ex rel. Colvin v. Brunner*, 120 Ohio St. 3d 110, 122, 2008-Ohio-5041, P62.

On the other hand, the reasons stated in the Colombo letter are persuasive to us. First, Directive 2026-35 is the permanent directive on provisional voting, which was not cited in the Taft Letter. It states on page 8-301 to 8-302 that "certain voters can cast a provisional ballot at their polling place on Election Day, including: voters who moved from one precinct to another within a county and didn't update their address by the voter registration deadline [and] *voters who have moved outside of their county (but still in Ohio)* and didn't update their address by the deadline." The Directive then states that "on Election Day, registered voters can vote at their assigned polling place for their precinct, the board office, or, if the board has established another voting location in the county in lieu of its office, voters can use that location." As in RC 3505.181 and RC 3505.183, there is no distinction within Directive 2026-35 between a voter that moved from within the county and a voter who moved from outside the county. **Even if there is an ambiguity in the provisional statutes, the Secretary of State has already resolved it through this directive and other official publication.**

Directive 2026-35 also closely aligns with the Help America Vote Act, which provides for a voter to always be offered the opportunity to vote a provisional ballot at their polling location on Election Day, and for the ballot to be counted in accordance with state law. 52 U.S.C. 21082. Directive 2026-35 contains Section 8.05, which is titled "Mandatory Step-by-Step Process for Determining Eligibility" and states that "the board must follow the steps in the chart below to

determine if a provisional ballot can be counted." In Step 6, which is the step to determine residency of the county and correct precinct, there is again no distinction made regarding in-county and out-of-county provisional voters. Instead, it instructs the Board to proceed to Step 7 if the "voter is a resident of the county and the precinct in which the provisional ballot was cast [and/or] the voter moved and provided a new address within the precinct on their Provisional Ballot Affirmation." It instructs the Board to reject the provisional ballot if the voter cast the provisional ballot in the wrong precinct and it is shown that the poll worker sent the voter to the correct precinct and completed Form 12-D, and to reject the provisional ballot if the voter cast the provisional ballot in the wrong precinct AND polling location. Affected voters on this issue do not fall under either rejection reason in Step 6.

Here, such voters were likely casting provisional ballots in the correct precinct. There is no direction in Directive 2026-35 to reject a provisional ballot on the basis that it was cast in the correct precinct but in the wrong polling location. On the contrary, Step 6 instructs the Board to count all provisional ballots cast in the correct precinct by a resident of the precinct. Such is the case here. The affected voters attested to their residency within the precinct and voted in the correct precinct. Therefore, their provisional ballots should be counted. Directive 2026-35 provides the mandatory process for determining provisional ballot eligibility, and a post-election departure from the mandatory provisions within the Directive would have the effect of disenfranchising eligible voters.

The Taft Letter claims an analogy in this instance to the fact that votes cast in the wrong precinct are not valid. We first state that such analogy, which would have the effect of disenfranchising voters, is inappropriate. The conflation between wrong precinct and wrong location risks importing law that does not, and should not, control here. But even within the analogy, the law requires that in order for a wrong precinct vote to be invalid, it must be shown that the poll worker informed the voter that a vote cast in the wrong precinct will not count, and the poll worker must sign Form 12-D under the penalty of election falsification. The failure to complete the form could result in the invalidation of all or part of the provisional ballot. To the extent that such an analogy is appropriate, it demonstrates that such votes should count, since the voter was not instructed that their vote may not count if not cast at the Board office. To find otherwise risks a substantial burden imposed on a citizen's right to vote by automatically disqualifying ballots where a poll worker caused the error. See *SEIU, Local 1 v. Husted*, 906 F. Supp. 2d 745, 752, 2012 U.S. Dist. LEXIS 154043, *22-23, 2012 WL 5334080.

Alternatively, despite the Taft letter's misplaced over-reliance on RC 3503.16(C), which allows a county-to-county mover to update their voter registration by voting a provisional ballot at the County Board of Elections, the letter neglects to mention the very next clause in the statute which provides: "or, if pursuant to division (C) of section 3501.10 of the Revised Code the board has designated another location in the county at which registered electors may vote, *at that other location* instead of the office of the board of elections" RC 3501.10(C) permits board of elections to "maintain permanent or temporary branch offices at any place within the county, provided that, if the board of elections permits electors to vote at a branch office, electors shall not be permitted to vote at any other branch office or any other office of the board of election." We submit that RC 3501.10(C) perfectly describes polling places, which the Board of Elections have temporarily leased on Election Day, and are the designated place for voters residing in the precincts served by

the polling place to vote. As such, in approving its leases and list of polling locations for the 2026 General Election, the Hamilton County Board of Elections had effectively designated all of its polling locations as a place where county-to-county movers could update their address by voting provisional under RC 3503.16(C).

In short, The Taft letter proposes an incredulous interpretation of a statutory ambiguity which has already been resolved by Secretary of State directives and implementation. RC 3505.181 and RC 3505.183 do not prohibit the casting and counting of provisional ballots by a voter who moved from another county in Ohio at their new polling location on Election Day. To the extent that the statutes are ambiguous, Directive 2026-35 reconciles the statutes by providing a lawful interpretation of the Ohio Revised Code, which has been followed for many election cycles. Additionally, ambiguous statutes should be construed in favor of the right to vote.

There is also an important constitutional issue at play. These affected voters cast the provisional ballots with no notice that their ballot may not be counted on the basis of where it was cast. It is well established that voters have the right to cast a provisional ballot at any voting location, and that they must be informed that the ballot may not count if they are attempting to cast the provisional ballot in a precinct in which they do not reside. If the voter is not so informed, the provisional ballot will count, all or in part, if not otherwise invalid.

By our votes, we were following Directive 2026-35 that your office issued. Since no instruction was given here, and to avoid infringing on the right to vote after the election has occurred, these affected provisional ballots must count if not otherwise invalid. For this reason, we respectfully request that you break the tie vote in favor of counting the provisional ballots cast at polling places on Election Day by voters who have moved from a different Ohio county and did not update their address by the deadline.

Respectfully submitted,

Alexander F. Linser

Joseph L. Mallory