**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OHIO DEMOCRATIC PARTY and JONATHAN BRADNER, | § | Case No.: 2:26-cv-01707-JLG-CMV |
| *Plaintiffs,* | § | Judge James L. Graham |
| v. | § | Magistrate Judge Chelsey M. Vascura |
| FRANK LAROSE, in his official capacity as Ohio Secretary of State, HAMILTON COUNTY BOARD OF ELECTIONS, ALEXANDER F. LINSER, ALEX M. TRIANTAFILOU, CHARLES H. GERHARDT, III, and JOSEPH L. MALLORY, in their official capacities as members of the Hamilton County Board of Elections, | § | **EMERGENCY ELECTION CASE**<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REQUESTED**<br><br>**ORAL ARGUMENT REQUESTED** |
| *Defendants.* | § | |

---

**PLAINTIFFS OHIO DEMOCRATIC PARTY AND JONATHAN BRADNER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

Plaintiffs Ohio Democratic Party and Jonathan Bradner respectfully move this Court, under Federal Rule of Civil Procedure 65 and S.D. Ohio Civil Rule 65.1, for a temporary restraining order and, after an expedited hearing, a preliminary injunction protecting the right of registered Ohio voters who moved to Hamilton County from another Ohio county without updating their registration address and who voted by casting a provisional ballot at the polling place for their new address (the "Disputed Ballots") to have their ballots counted, just as other similarly situated voters have had their ballots counted throughout the State of Ohio in this election. Because the Hamilton County Board of Elections, unlike every other election authority in the State, intends not to count such ballots, and the Secretary of State has told the Board that they "shall not be counted under

R.C. 3505.27 as a matter of law," Plaintiffs ask the Court to enter a temporary restraining order that restrains the Hamilton County Board of Elections and its members from proceeding with finally counting, canvassing, or certifying in a way that fails to include the Disputed Ballots. The temporary restraining order should also enjoin Defendant Frank LaRose, in his official capacity as Ohio Secretary of State, from enforcing or directing the rule stated in his letter to the Hamilton County Board of Elections—that, because three of its members did not agree, the Disputed Ballots "shall not be counted under R.C. 3505.27 as a matter of law"—or any other rule under which the Disputed Ballots are found ineligible because they were not cast at the Board's office

Under S.D. Ohio Civil Rule 7.1(b)(2), Plaintiffs request oral argument. This motion presents time-sensitive constitutional questions about whether 740 provisional ballots in Hamilton County must be counted, on a schedule set by the November 24, 2026 deadline to complete the canvass and the January 1, 2027 start of the affected terms of office. Argument will help the Court resolve those questions promptly. If the Court will take evidence at the preliminary-injunction hearing, Plaintiffs will obtain a hearing date from chambers under S.D. Ohio Civil Rules 7.1(b)(1) and 65.1(a).

As set forth in the accompanying memorandum, a temporary restraining order and preliminary injunction are appropriate because Plaintiffs are likely to succeed on the merits, face irreparable harm absent relief, and the balance of harms and public interest favor relief. This motion is supported by the accompanying memorandum in support and the Complaint and its exhibits, including the affidavits of William Rich, Jasmyne Moore, Kathleen Clyde, and Jonathan Bradner.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Spencer J. Hattemer*
Spencer J. Hattemer, Trial Attorney (0102663)
**COOPER ELLIOTT**
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (fax)
spencerh@cooperelliott.com

-and-

Norman L. Eisen*
Tianna Mays*
David W. Ogden*
Sofia Fernandez Gold*
Elizabeth S. Westfall*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
Tel: (202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
david@democracydefenders.org
sofia@democracydefenders.org
elizabeth-contract@democracydefenders.org

-and-

Rebecca (Beth) Stevens*
bstevens@msgpllc.com
Joaquin Gonzalez*
jgonzalez@msgpllc.com
Andrew Silberstein*
asilberstein@msgpllc.com
**MARZIANI, STEVENS &**
**GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

**Pro Hac Vice Motion Forthcoming*

**ATTORNEYS FOR PLAINTIFFS**

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

## INTRODUCTION

On Election Day, 740 registered Ohio voters who had moved to Hamilton County from another Ohio county cast provisional ballots at the polling place for their new residence (the "Disputed Ballots"). (Compl., ECF No. 1, ¶¶ 31, 49.) They did so in reliance on the Secretary of State's guidance and the Ohio Election Official Manual directive that such voters "can cast a provisional ballot . . . at their polling place on Election Day," Ohio Election Official Manual 8-301 to 8-302 (Dir. 2026-35), and need not vote at the Board's office. *Id.* Such ballots have been counted in Hamilton County and across the state in past elections and in the November 3, 2026 General Election. (Compl. ¶¶ 32, 52–56.) No Defendant has found any of these voters ineligible. (*Id.* ¶ 51.) Yet the Hamilton County Board of Elections has determined not to count these ballots—not because a majority of the Board voted to reject them, but because the Board divided 2–2 and the Secretary of State declined to decide the question, declaring instead that, without three votes to count them, the ballots "shall not be counted . . . as a matter of law." (*Id.* ¶¶ 48–51.) This result would violate the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution, as well as the fundamental right to vote afforded by the Constitution to the 740 registered Ohio voters whose ballots are at issue.

The canvass must be completed by Tuesday, November 24, 2026, and the Hamilton Board is scheduled to certify its results at 10:00 a.m. that day. (*Id.* ¶ 2; R.C. 3505.32(A); Ohio Sec'y of State Directive 2026-48 (Oct. 2, 2026).) In Ohio House District 29, where Plaintiff Jonathan Bradner is the Democratic candidate, the unofficial election-night count separated the candidates

by 19 votes, within the margin that triggers an automatic recount. (*Id.* ¶¶ 8-9, 41, 63, 65; Ex. 10, ECF No. 1-10, Bradner Aff. ¶ 3.) Plaintiffs ask this Court to restrain the Board and its members from finally counting, canvassing, or certifying the results in a way that fails to include the Disputed Ballots.

## BACKGROUND

### I. Ohio tells its voters and election officials that inter-county movers can vote provisionally at their polling place.

Many Ohioans who voted on November 3, 2026 had moved between Ohio counties without updating their registration ("inter-county movers"). (Compl. ¶ 18.) Ohio law allows these voters to cast provisional ballots. (*Id.* ¶ 19.) The Secretary of State's Election Official Manual, a permanent directive to Ohio's boards of elections, addresses this process. (*Id.* ¶¶ 21–23.) Under the heading "WHEN AND WHERE CAN A PROVISIONAL BALLOT BE CAST?", Chapter 8 of the Manual, on provisional voting, tells election officials that "[c]ertain voters can cast a provisional ballot at the board office or early voting site during the established early voting period, or at their polling place on Election Day, including . . . [v]oters who have moved outside of their county (but still in Ohio) and didn't update their address by the deadline." Election Official Manual at 8-301 to 8-302 (Directive 2026-35). (Compl. ¶¶ 24-25, 46.)

The Manual also provides step-by-step instructions that county election boards must follow to determine whether to count a provisional ballot. Election Official Manual at 8.05. As relevant here, the instructions require officials to determine if the voter was registered to vote anywhere in Ohio at least 30 days before the election, and if the voter is a resident of both the county and the precinct in which the provisional ballot was cast. The instructions do not mandate or permit the rejection of provisional ballots that inter-county movers cast in their correct precinct.

Ohio's practice has matched that guidance. For at least a decade, Ohio counties have

counted provisional ballots cast by inter-county movers at their polling places. (*Id.* ¶ 29.) By way of example, in this election, the chairman of the Summit County Board of Elections—who has held his post since March 2016—attested that "[i]t has never been the practice, in Summit County or elsewhere, to require voters to travel to the Board of Elections headquarters in order to vote under these circumstances." (*Id.* ¶ 30; Ex. 4, ECF No. 1-4, Rich Aff. ¶¶ 6–7.) That practice continued in this election. The Lucas County Board of Elections, for example, directed provisional voters to cast their ballots at their polling places on Election Day "[c]onsistent with" the Secretary's directive. See Resp'ts' Mot. for J. on the Pleadings at 3–4, *State ex rel. Schimmel v. Lucas Cnty. Bd. of Elections*, No. 2026-1574 (Ohio Nov. 18, 2026). And on November 16, 2026, it voted 4–0 to accept approximately 2,400 provisional ballots, including ballots cast in the same circumstances as in Hamilton County, and it had opened and counted those ballots by November 17; that decision is challenged in a pending original action in the Ohio Supreme Court. *Id.* (Compl. ¶ 53.) In this election, it appears that no county other than Hamilton County has refused to count such ballots in accordance with this longstanding guidance.

## II. The Hamilton Board deadlocks, and the Secretary declines to break the tie but declares that the ballots will not be counted.

On November 3, 2026, 740 inter-county movers appeared at the polling place for their new Hamilton County address, were issued provisional ballots by poll workers, completed the provisional-ballot affirmation, and cast their ballots. (*Id.* ¶¶ 18, 36.)

On November 16, 2026, the day before the Hamilton Board met to decide which provisional ballots to count, the Taft Law Firm, writing for Plaintiff Bradner's opponent, Representative Cindy Abrams, urged the Board not to count this category of ballots, arguing that inter-county movers cannot cast provisional ballots at a polling location on Election Day and instead must vote at the office of the Board of Elections. (Compl. ¶ 36; Ex. 6, ECF No. 1-6, Taft

letter, at 1–2.) On November 17, the Board approved every other category of provisional ballots unanimously; on the Hamilton Disputed Ballots alone, a motion to reject the ballots failed 2–2. (Compl. ¶¶ 41, 49.) The same day, Chair Linser and Mr. Mallory asked the Secretary to break the tie. (*Id.* ¶ 44.)

The Secretary declined to break the tie, notwithstanding that state law authorizes him to break ties concerning the eligibility of provisional ballots. *See State ex rel. Skaggs v. Brunner*, 120 Ohio St.3d 506, 2008-Ohio-6333, ¶ 22 (Secretary broke 2-2 tie and voted to grant the motions that certain categories of provisional ballots be deemed eligible to be counted and to find all of the disputed provisional ballots to be valid). He wrote that he "will not issue a substantive decision" and that, because three members did not agree, the ballots "shall not be counted under R.C. 3505.27 as a matter of law." (Compl. ¶ 48; Ex. 8, ECF No. 1-8, Secretary LaRose letter.) On November 20, 2026, the Board again divided 2–2 and stated that, under the Secretary's guidance, the Hamilton Disputed Ballots would not be counted. (Compl. ¶ 49; Ex. 10, ECF No. 1-10, Bradner Aff. ¶ 6.) Before that vote, Chair Linser observed: "Every other county that has addressed this issue has voted in favor of counting these ballots," and that voters "came to the polls with the understanding that their vote would count if they voted this way." (Compl. ¶ 50; Ex. 10, ECF No. 1-10, Bradner Aff. ¶ 5.)

## LEGAL STANDARD

A plaintiff is entitled to a preliminary injunction if it shows that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, 162 F.4th 631, 637 (6th Cir. 2025) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "When [courts] evaluat[e] these

factors for an alleged constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I. Plaintiffs are likely to succeed on the merits.

Plaintiffs' claims rest entirely on the Fourteenth Amendment. Plaintiffs do not ask the Court to decide what Ohio law requires or to order state officials to comply with a specific statutory interpretation, as other state officials have asked a court to do in *State ex rel. Schimmel v. Lucas Cnty. Bd. of Elections*, No. 2026-1574 (Ohio). The question presented by this suit and motion is whether the Defendants may abrogate Ohio voters' right to have their votes counted by discarding an entire category of ballots, without finding a single voter or ballot ineligible, when the Secretary of State's own directive told election officials those ballots could be cast at the voter's polling place, the Board's poll workers issued the ballots, and every other Ohio county has counted the ballots or has announced it intends to. (Compl. ¶¶ 33–35, 55, 99.) They may not.

#### A. Plaintiffs have standing, and the Secretary is a proper defendant.

Plaintiff Ohio Democratic Party ("ODP") is one of Ohio's two legally recognized major political parties organized and operating within the meaning of Ohio Rev. Code § 3517.01(A)(1). ODP's primary purpose is to elect Democratic Party candidates to public office, and, in line with that mission, support candidates for local, state, and federal office in the November 3, 2026 General Election. In addition to fielding candidates, ODP has thousands of members who volunteer their time and money to support these efforts and the Democratic Party. ODP counts the several million Ohio voters, including voters in Hamilton County, who supported Democratic candidates

with their vote as part of its constituency as well. ODP sues on its own behalf and on behalf of its members who cast Disputed Ballots. (*Id.* ¶¶ 7, 9; Ex. 9, ECF No. 1-9, ODP Aff.)

In addition to its own rights and those of its members, ODP asserts the rights of the affected voters. Besides its own injury, a litigant asserting the rights of others must show a "close" relationship with the right-holder and a "hindrance" to the right-holder's ability to protect his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). A candidate "is so closely related to and dependent upon those who wish to vote for him and his litigation will so vitally affect their rights" that courts "will permit a candidate to raise the constitutional rights of voters." *Mancuso v. Taft,* 476 F.2d 187, 190 (1st Cir. 1973). The affected voters cast the ballots that will decide the result of elections in which ODP has an interest, and they are hindered from protecting their own interests: they cast their ballots based on the State's guidance, they have not been told that their ballots are among those rejected, and the terms of the offices for which they voted begin on January 1, 2027, leaving them no realistic way to have their ballots counted on their own. (Compl. ¶¶ 34, 65, 67.)

Plaintiff Bradner is a candidate in an affected contest. Candidates have "a concrete and particularized interest in the rules that govern the counting of votes in their elections." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 82 (2026). Indeed, this Court has held that a candidate challenging the Hamilton County Board's treatment of provisional ballots had standing because that treatment mattered to the outcome of her election. *Hunter v. Hamilton Cnty. Bd. of Elections*, 850 F. Supp. 2d 795, 803 (S.D. Ohio 2012). Refusing to count the Disputed Ballots injures Plaintiff Bradner by producing an official count in his own election that omits ballots cast by qualified voters in reliance on the State's instructions. (Compl. ¶ 64.) Plaintiff Bradner also asserts the rights of the affected voters, many of whom likely cast provisional ballots in his favor.

Plaintiffs' injuries are also traceable to Defendant LaRose and redressable by an order

against him. When the Hamilton Board submitted its tie to the Secretary, the Secretary directed that the Disputed Ballots "shall not be counted under R.C. 3505.27 as a matter of law," and the Board then declined to count them, stating that it was following the Secretary's guidance. (Compl. ¶¶ 47-49, 65; Ex. 10, ECF No. 1-10, Bradner Aff. ¶ 6.) The Secretary instructs Ohio's boards of elections through directives, and the boards must follow them. (Compl. ¶¶ 10, 21-23, 45.) An order barring him from enforcing or directing the rule stated in his letter, and requiring him to direct the Board to carry out this Court's order, would remove the instruction on which the Board has relied. The Eleventh Amendment does not bar that relief: Plaintiffs sue the Secretary in his official capacity to enjoin his continuing enforcement of a rule that violates the Fourteenth Amendment, and he has more than "some connection with the enforcement" of that rule. *Ex parte Young*, 209 U.S. 123, 157, 159–60 (1908).

**B. Disparate treatment of voters violates the Equal Protection Clause of the Fourteenth Amendment.**

Equal protection governs not only who may vote but how votes are counted. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (per curiam); *Hunter*, 635 F.3d at 234. At a minimum, equal protection requires "nonarbitrary treatment of voters." *Hunter*, 635 F.3d at 234 (quoting *League of Women Voters*, 548 F.3d at 477 (quoting *Bush*, 531 U.S. at 105)). A plaintiff need not show intentional discrimination. *Id.* at 234 n.13. And distinctions that election officials draw after an election, while reviewing ballots, rather than as "the result of a broader policy determination by the State of Ohio," are "especially vulnerable to equal-protection challenges." *Id.* at 238. In other words, "unanticipated inequality is especially arbitrary." *Id.* at 238 n.16.

The Hamilton Board's treatment of the Disputed Ballots is arbitrary in exactly this way.

Upon information and belief, the Board counted the provisional ballots of inter-county movers who cast them at the Board's office, and of voters who moved within Hamilton County and cast them at their polling places on Election Day. (Compl. ¶¶ 42–43.) A voter who cast a provisional ballot at the polling place for the precinct of the voter's new residence is similarly situated in every material respect to one who cast the same ballot at the Board's office. The Sixth Circuit has seen "no reason to distinguish" provisional ballots cast at a county board office from those cast at precinct polling locations: "[i]n both instances, the voter appears at a state-authorized polling location." *NEOCH*, 696 F.3d at 590 (addressing wrong-precinct ballots). Yet here the Board counted the one and refused to count the other, without any standard or stated reason for the difference. (Compl. ¶ 69, 76.) The Sixth Circuit found that kind of treatment likely unconstitutional when this same Board weighed evidence of poll-worker error for wrong-precinct ballots cast at its office but not for those cast at polling locations. *Hunter*, 635 F.3d at 236–38. The same logic applies here.

Nor does the Manual's voter-registration chapter justify the difference. That chapter, which addresses voter registration and address changes, explains that intra-county voters can update their address and vote a provisional ballot at either the Board's office or their new polling place and that inter-county voters can go to the Board's office or "other designated" site to update their address and vote a provisional ballot. But these rules are silent as to the eligibility of provisional ballots cast by inter-county movers voting at their new precincts. *See* Election Official Manual at 4-137 to 4-138 (Directive 2026-31).

The provisional-voting chapter names both locations for inter-county movers, and, as interpreted by two Board members, its mandatory steps that Boards must follow to determine whether to count a provisional ballot draw no distinction between voters who moved within the

county and voters who moved from another county. (Election Official Manual at 8.05; Ex. 2, Linser & Mallory letter, at 2–3). As relevant here, the instructions require officials to determine if the voter was registered to vote anywhere in Ohio at least 30 days before the election, and if the voter is a resident of the county and the precinct in which the provisional ballot was cast. The instructions do not mandate or permit the rejection of provisional ballots that inter-county movers cast in their correct precinct. (Election Official Manual at 8.05) In any event, these voters cast their ballots where the Secretary's directive told them they could, and poll workers issued them ballots there. Discarding those ballots now penalizes voters for an error for which they "bear no responsibility." *Hunter,* 635 F.3d at 238. A distinction that the State's provisional-voting directive does not draw, that no majority of the Hamilton Board has adopted, and that the Secretary did not adopt, cannot justify counting one group's ballots and discarding the other's. (Compl. ¶¶ 25, 41, 48-49, 51.)

Every other county board of election in Ohio, including every other board that received a challenge from the Taft Law Firm, has counted or will count provisional ballots cast under the same circumstances—only the Hamilton County Board has refused. Ex. 5, Jasmyne Moore Affidavit, 7. For example, the Lucas County Board of Elections voted 4-0 to accept approximately 2,400 provisional ballots, including ballots of the kind in dispute here. (Compl. ¶¶ 53.) So too has the Wood County Board of Elections. (Compl. ¶ 54.)

In *Hunter*, county-to-county variation was "not at issue," and the court rested on the Board's unequal treatment of ballots *within* the county. 635 F.3d at 242. Plaintiffs' claim likewise involves the Hamilton Board's own unequal treatment of provisional voters. But *Hunter* recognized that "[s]tatewide equal-protection implications could arise . . . to the extent that the ballots at issue include candidates for district and statewide races that transcend county lines." *Id.*

The Disputed Ballots include votes for statewide offices—Governor and Lieutenant Governor, Attorney General, Auditor of State, Secretary of State, Treasurer of State, two seats on the Supreme Court of Ohio, and United States Senator—that count in all other Ohio counties but are discarded in Hamilton County, though the contests, the voters' eligibility, and the State's instruction to its officials are the same. (Compl. ¶¶ 52, 55, 79.) In any event, *Bush v. Gore* confirms that disparities between counties present the same equal-protection concern. There, the Court invoked *Gray v. Sanders,* 372 U.S. 368 (1963), which struck down a State's "arbitrary and disparate treatment to voters in its different counties," and then faulted the Florida recount because its standards for judging contested ballots varied "from county to county." 531 U.S. at 106-107. The Court explained that once a State grants the right to vote on equal terms, it "may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104-105. That is precisely what Hamilton County has done.

**C. Rejecting the Disputed Ballots unduly burdens the right to vote.**

The Fourteenth Amendment protects the right to vote against burdens that the State's interests do not justify. A court weighs the character and magnitude of the burden against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). The more severe the burden, the more exacting the scrutiny. *Id.* Applying that framework, the Sixth Circuit in a very similar case held that Ohio's rejection of provisional ballots cast at the correct polling place but in the wrong precinct because of poll-worker error likely imposed a burden that the State's interests did not justify. *NEOCH*, 696 F.3d at 591–97.

Applying that standard, the Sixth Circuit has held that Ohio's automatic rejection of provisional ballots cast at the correct polling place but in the wrong precinct because of poll-worker error likely failed the *Anderson*/*Burdick* balancing test, because "the State fail[ed] to identify precise interests justifying this substantial burden." *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 589–90, 592–97 (6th Cir. 2012).

So too here. The burden at issue here is the most severe a State can impose on a voter's franchise: rejecting a ballot outright nullifies suffrage altogether. (Compl. ¶ 87.) This burden falls on 740 voters in Hamilton County who voted where the State's provisional-voting directive told them to vote, and because it was imposed after the votes were cast, they could not avoid the burden or cure it. (*Id.* ¶¶ 31, 87, 100.)

On the other side of the scale, the only interest offered is a post-hoc interpretation of state law: a Board member has cited adherence to the Ohio Revised Code (Ex. 10, ECF No. 1-10, Bradner Aff. ¶ 7), the Taft Law Firm letter urged that Ohio law allows inter-county movers to vote provisionally only at the board office (Ex. 6, ECF No. 1-6, Taft letter, at 1–2), and the Secretary relied on a statute under which no part of a ballot is counted unless three board members agree on it (Ex. 8, ECF No. 1-8, Secretary LaRose letter (citing R.C. 3505.27)). Such a reading, when applied after the election to voters who followed poll worker direction and poll workers relied on the Secretary's directive, cannot justify discarding their ballots where doing so would violate the United States Constitution. Nor can the Secretary's tie-vote rule: whatever interest the State has in requiring three votes to resolve a disagreement over how a ballot should be counted, that interest does not justify discarding an entire category of ballots without a finding that any voter was ineligible. Nor would counting them disserve the State's precinct-based system or the integrity of its registration rolls: upon information and belief, each voter cast a provisional ballot at the polling

place for the voter's new residence after completing the affirmation the State requires, and counting the Disputed Ballots that are otherwise valid would change no other ballot or precinct and no step by which the State verifies a provisional voter's eligibility. (Compl. ¶ 31, 81.) No Defendant has found that any Disputed Ballot was cast by an ineligible voter, or alleged fraud. (*Id.* ¶ 51, 88.) Under any level of scrutiny, refusing to count the Disputed Ballots unconstitutionally burdens the right to vote. (*Id.* ¶ 89.)

### D. Discarding ballots cast in accordance with the State's guidance violates due process.

"The Due Process clause is implicated, and § 1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair." *Warf v. Bd. of Elections of Green Cnty.*, 619 F.3d 553, 559 (6th Cir. 2010) (quoting *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008)). Such a case may arise where a State "significantly departs from previous state election practice," *id.*, or through "state actions that induce voters to miscast their votes," *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 597 (6th Cir. 2012) ("*NEOCH*") (describing *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), as "finding that Rhode Island's post-election invalidation of absentee ballots violated due process, because voters relied on state directives allowing such ballots"). In a case involving this same county Board, the Sixth Circuit, while finding it premature to decide a due process claim, observed that "[t]o disenfranchise citizens whose only error was relying on poll-worker instructions appears to us to be fundamentally unfair." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 243–44 (6th Cir. 2011). The next year, in *NEOCH*, the court affirmed a finding that Ohio likely violated due process by rejecting provisional ballots that voters miscast because of poll-worker error. 696 F.3d at 597–98.

The same marks of fundamental unfairness are present here. First, the voters did what the State and county said they were permitted to do. The Election Official Manual chapter on

provisional voting told election officials that inter-county movers "can cast a provisional ballot . . . at their polling place on Election Day." Election Official Manual at 8-301 to 8-302. Poll workers—the county actors that Ohio gives "the ultimate responsibility of directing voters to the right location to vote," *Hunter*, 635 F.3d at 243—issued these voters provisional ballots at their polling places and accepted their affirmations, and, upon information and belief, none told them to vote elsewhere. (Compl. ¶¶ 26, 31, 33.) The voter-registration chapter, discussed in Part I.B above, does not change that. If rejecting ballots that voters miscast because a poll worker misdirected them is likely a due process violation, *NEOCH*, 696 F.3d at 597–98, then rejecting ballots cast where the State's own provisional-voting directive says such voters can vote must be as well.

Second, rejecting these ballots "significantly departs from previous state election practice." *Warf*, 619 F.3d at 559. These ballots have been counted in Hamilton County in multiple prior elections and, upon information and belief, throughout Ohio. (Compl. ¶¶ 29–30, 32, 50, 97.)

Third, the voters had no reason to foresee the rejection and now have no means to cure their ballot: the election is over, and they cannot vote again elsewhere. (Compl. ¶ 100.) In *Griffin*, after Rhode Island's highest court had held the absentee ballots invalid, the First Circuit refused to reject the due process claim of voters who were "doing no more than following the instructions of the officials charged with running the election" on "the fiction that the voters had a duty, at their peril, somehow to foresee" that their ballots would later be held invalid. 570 F.2d at 1075–76. The remedy there was a new primary, *id.* at 1079–80; here, no court has held the Disputed Ballots invalid, and the constitutionally mandated remedy is simply to count them.

"[G]arden variety election irregularities" do not rise to the level of a due process violation, *NEOCH*, 696 F.3d at 597 (quoting *Griffin*, 570 F.2d at 1076), but this is no minor inconvenience.

Defendants are excluding an entire category of ballots—740 in Hamilton County—without finding a single voter ineligible, without a majority of the board voting to reject them, and without a substantive decision by the Secretary. The ballots will be excluded only because two of four board members would not agree to count them. (Compl. ¶¶ 41, 48-49, 51.) Discarding registered voters' ballots on that basis, two weeks after they voted as the State's provisional-voting directive permitted and when there is no basis for cure, renders the conduct of this election fundamentally unfair. (*Id.* ¶¶ 41, 96, 100.)

To the extent due process requires purposeful conduct—a question the Sixth Circuit has not decided—*NEOCH* found it in the State's "intent to enforce its strict disqualification rules without exception, despite the systemic poll-worker error identified in this litigation and others." 696 F.3d at 597. So too here: before the Secretary responded and before the November 20 Board vote, two Board members told the Secretary in writing that ballots cast this way had always been counted and that the voters had cast them "with no notice that their ballot may not be counted on the basis of where it was cast." (Ex. 2, ECF No. 1-2, Linser & Mallory letter, at 1, 4.) County officials were also clearly on notice that other counties in the state had counted similarly situated ballots. (Compl. ¶ 50.) The discriminatory treatment therefore was knowing and intentional.

**E. Abstention is not warranted.**

Plaintiffs note that a separate case, *Schimmel,* presents the state-law questions as to whether ballots cast this way should be counted. (Compl. ¶ 53; Ex. 8, ECF No. 1-8, Secretary LaRose letter.) This case provides no basis for abstention, and because time is short, Plaintiffs affirmatively address abstention now. Abstention is "an extraordinary and narrow exception" to a federal court's duty to decide the cases before it. *Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)). *Pullman* abstention applies

only where an unclear question of state law, once answered, would obviate or substantially modify the federal constitutional question. *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983). A pending state proceeding therefore only impacts the federal case if its answer could dispose of the federal claims. And even then, *Pullman* abstention is discretionary, rather than automatic. *Schimmel* cannot dispose of Plaintiffs' federal claims, because those claims do not depend on how the court there answers the state-law question. (Compl. ¶¶ 3–4.) Whatever Ohio law is held to require, Defendants did not apply it uniformly to these voters. The State told county election officials that polling places were open to these voters, poll workers issued them ballots there, and the Defendant Board counted provisional ballots cast by identically situated voters. (*Id.* ¶ 25, 31, 42-43.) The constitutional injury lies in discarding those ballots after the fact, without any finding that the voters were ineligible, on the strength of an evenly divided board vote. A state-court ruling that Ohio law forbids counting them would not resolve that claim; it would present it. In *Hunter*, which involved this same Board's treatment of provisional ballots, the Sixth Circuit declined to abstain in part because the state-law answer "does not resolve the constitutional dispute properly before this court." 635 F.3d at 233. That reasoning applies here, whether or not the state-law question has been answered, because the answer cannot resolve the federal claim.

Even if the Court were inclined to abstain, the Sixth Circuit has said that "when the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains." *Jones*, 848 F.3d at 754. The terms of the affected offices begin on January 1, 2027, so delay is itself a harm.

## II. Excluding the Disputed Ballots will irreparably harm Plaintiffs.

"When constitutional rights are threatened or impaired, irreparable injury is presumed," and "[a] restriction on the fundamental right to vote therefore constitutes irreparable injury."

*Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). The candidates face harm of their own: an official count in their own elections that omits ballots cast by qualified voters. (Compl. ¶¶ 63-64.)

The harm is imminent. The canvass must be completed by November 24, 2026, and, unless enjoined, the Hamilton Board, following the Secretary's guidance, will exclude the Hamilton Disputed Ballots from the canvass, any recount, and the certification of results in House District 29. (Compl. ¶¶ 2, 65.) If the ballots are excluded from the canvass, a later order to count them may come too late—when the terms of the affected offices begin on January 1, 2027, the deprivation will become permanent. (*Id.* ¶¶ 65.)

**III. The balance of equities and public interest weigh in favor of injunctive relief.**

The balance of equities weighs heavily in Plaintiffs' favor. Absent relief, 740 eligible Ohio voters in Hamilton County will lose their votes, and the candidates in the affected contest will face a certified result that omits them. The burden on Defendants is slight. Counting the ballots that are otherwise valid asks only that the Board apply to them the same review it applies to every other provisional ballot. The burden on the Secretary is a single directive to one county board, the ordinary means by which he instructs boards of elections. Ohio Rev. Code § 3501.05(B). The certification relief is limited to the contest in which the Disputed Ballots may change the result—Ohio House District 29. Holding open that certification, or in the alternative making it expressly subject to further order of this Court, leaves the Board free to canvass and certify every other contest on schedule, and an expedited schedule will allow any counting and amended canvass to be completed well before the terms of the affected offices begin on January 1, 2027.

The public interest points the same way. While the State has "a strong interest in [its] ability to enforce state election law requirements," members of the public have a "strong interest in

exercising the fundamental political right to vote," and "[t]hat interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Hunter*, 635 F.3d at 244 (internal quotation marks omitted). "The public interest therefore favors permitting as many qualified voters to vote as possible." *Obama for Am.*, 697 F.3d at 437. And because the election is over, there is no risk that an order will confuse voters or keep them from the polls. *See Hunter*, 635 F.3d at 244.

**IV. The Court should restrain Defendants from finalizing the results without counting the Disputed Ballots.**

Plaintiffs ask the Court to restrain the Board and its members from finally counting, canvassing, or certifying the results in a way that fails to include the Disputed Ballots. That relief is warranted on this record. The question presented is primarily legal: no Defendant has found any of these voters ineligible, and a motion to reject their ballots failed on a 2–2 vote of the Board. (Compl. ¶¶ 41, 49, 51). In *Hunter*, the district court, the day after the complaint was filed and after an emergency hearing, ordered this same Board to investigate rejected provisional ballots and to "include in the recount" those improperly cast because of poll-worker error, and the Sixth Circuit affirmed that order. 635 F.3d at 226, 247. The court vacated a later order that itself directed particular ballots to be counted, because the district court entered it without prior notice to the Board or an opportunity for a hearing. *Id.* at 245–46. The relief requested here is narrower than either of those orders as it directs no particular ballot to be counted, but only bars the Board from finalizing results that exclude the Disputed Ballots. A hearing is required before such relief "when there are disputed factual issues," but not "when the issues are primarily questions of law." *Id.* at 246 (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007)).

Relief against the Secretary is needed to make that order effective. The Board has declined

to count the Disputed Ballots because, it said, it was following the Secretary's guidance, and Ohio's boards must follow his directives. (Compl. ¶¶ 21, 48-49, 65; Ex. 10, ECF No. 1-10, Bradner Aff. ¶ 6.) An order directed to the Board alone would leave in place the Secretary's instruction that the ballots "shall not be counted." Plaintiffs therefore ask the Court to enjoin the Secretary from enforcing or directing that rule, or any other rule under which the Disputed Ballots are excluded, and to require him to issue a directive to the Board implementing this Court's order—which is merely the instrument he ordinarily uses to instruct the boards. Ohio Rev. Code § 3501.05(B). That relief rests on the Fourteenth Amendment alone. Plaintiffs do not ask the Court to construe R.C. 3505.27 or to order the Secretary to comply with Ohio law; the directive would carry out this Court's federal order.

Plaintiffs' requested relief preserves the status quo because it would maintain "the last, uncontested status preceding commencement of the controversy." *Blaylock v. Cheker Oil Co.,* 547 F.2d 962, 965 (6th Cir. 1976) (citation omitted). That status, reflected in the State's directives and election materials, was that inter-county movers could cast provisional ballots at their polling places on Election Day and that those ballots, if otherwise valid, would be counted. The status quo was disturbed only after the election, when Defendants refused to count the Disputed Ballots. An order barring Defendants from finalizing the results without the Disputed Ballots maintains the status quo and keeps Defendants' refusal from becoming final while this case is decided. And even if the requested relief were considered as altering the status quo, a court may do so "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Cheker Oil*

*Company*, 573 F.2d 921, 925 (6th Cir. 1978) (quoting *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)). The instant status quo, with the Disputed Ballots discounted, causes irreparable injury to Plaintiffs, and restraining Defendants from finalizing the results without the Disputed Ballots will minimize such injury. Indeed, the Sixth Circuit has affirmed just such a post-election temporary restraining order that "required affirmative action" of state election officials because "the State could not use arbitrary or unreasonable procedural rules to make [election] right[s] a nullity." *Stein v. Thomas,* 672 F. App'x 565, 569-570 (6th Cir. 2016).

## V. The Court should waive security.

Rule 65(c) provides that the Court may issue a temporary restraining order or preliminary injunction "only if the movant gives security" in an amount the Court considers proper. Fed. R. Civ. P. 65(c). Although that language "appears to be mandatory," in this Circuit "the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (affirming a decision to require no security in light of the strength of the movant's case and the strong public interest involved). No security is warranted: the requested relief imposes no monetary cost on Defendants beyond the ordinary administration of the election, Plaintiffs seek to vindicate fundamental constitutional rights, and their claims are strong. The Court should waive security or, at most, require a nominal bond.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and enter a temporary restraining order and, after an expedited hearing, a preliminary injunction providing the relief requested in the motion.

Respectfully submitted,

/s/ Spencer J. Hattemer
Spencer J. Hattemer, Trial Attorney (0102663)
**COOPER ELLIOTT**
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (fax)
spencerh@cooperelliott.com

-and-

Norman L. Eisen*
Tianna Mays*
David W. Ogden*
Sofia Fernandez Gold*
Elizabeth S. Westfall*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
Tel: (202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
david@democracydefenders.org
sofia@democracydefenders.org
elizabeth-contract@democracydefenders.org

-and-

Rebecca (Beth) Stevens*
bstevens@msgpllc.com
Joaquin Gonzalez*
jgonzalez@msgpllc.com
Andrew Silberstein*
asilberstein@msgpllc.com
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

**Pro hac Vice Motion Forthcoming*

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE AND CERTIFICATE UNDER S.D. OHIO CIV. R. 65.1**

I hereby certify that on November 23, 2026, this motion and the accompanying memorandum in support were filed electronically with the Clerk of the Court using the Court's electronic case filing system, which will deliver a copy to all counsel of record. Defendants will also be served with the summons, complaint, this motion, accompanying memorandum, and all supporting papers under Federal Rule of Civil Procedure 4.

Because counsel for Defendants have not yet appeared, I further certify that on November 23, 2026, I served a copy of the complaint and exhibits, this motion and accompanying memorandum, and all supporting papers by email delivery on:

- Defendant Secretary of State Frank LaRose
- Julie Pfeiffer, Section Chief of the Constitutional Offices Section of the Ohio Attorney General's Office, presumptive counsel for Defendant Secretary of State Frank LaRose
- Steve Simon, Chief Assistant Prosecuting Attorney, Civil Division of the Hamilton County Prosecuting Attorney's Office, presumptive counsel for Defendant Hamilton County Board of Elections and Defendant Board Members
- Defendant Board Member Alexander F. Linser
- Defendant Board Member Alex M. Triantafilou
- Defendant Board Member Charles H. Gerhardt, III
- Defendant Board Member Joseph L. Mallory
- Defendant Hamilton County Board of Elections through its Director and Deputy Director

*/s/ Spencer J. Hattemer*